UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

D-1 CHRIS SAMY, M.D.,

          Defendant.

_____/

Case. No.  16-cr-20610

HON. ARTHUR J. TARNOW

## RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF COMPASSIONATE RELEASE (75)

NOW COMES, the United States of America, by and through its undersigned counsel, as ordered by the Court, to respond to Defendant's Pro Se Renewed Motion for Compassionate Release (Dkt. 75) filed on June 24, 2019.  For the following reasons, the Court should deny Defendant's motion.  First, the Court lacks jurisdiction to consider Defendant's motion.  Second, Defendant's motion fails on its merits.

## I.    FACTUAL BACKGROUND

On February 1, 2018, Defendant pleaded guilty to Count Eight of the First Superseding Indictment, charging her with conspiracy to possess with intent to distribute and to distribute controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846. (Dkt. 46).  Pursuant to a Rule 11 Plea

Agreement, the parties agreed that the applicable guideline range for sentencing was 87 to 108 months. *Id.* at 21. Although the Probation Department was in agreement with that guideline range, the Court varied significantly from the guideline range and sentenced Defendant to a 36 month custodial term (Dkt. 58). Subsequently, an order was entered granting Defendant an extension of her report date (Dkt. 62). Defendant began serving her 36 month sentence on September 26, 2018, at Federal Medical Center (FMC) Carswell in Fort Worth, Texas.

After about a month of serving her sentence, on October 24, 2018, Defendant filed a request for reduction in her sentence (RIS)[1] with the Bureau of Prisons (BOP), pursuant to 18 U.S.C. § 3582(c)(1), based on suffering from "serious unstable chronic illnesses . . . which [are] life threatening." *See* Exhibit A - Defendant's Request for Reduction in Sentence with an Early Release. Pursuant to the BOP's Program Statement 5050.49, the BOP, on November 30, 2018, denied Defendant's request stating that Defendant did not meet the criteria for a reduction in her sentence

---

[1] Defendant uses the phrases "Reduction in Sentence (RIS) and Compassionate Release interchangeably and the standards are different. Nonetheless, the Defendant does not meet either standard. *See* Policy Statement of § 1B1.13 of the U.S.S.G. and 18 U.S.C. § 3582(c)(1)(A)(i)-(ii) regarding Compassionate Release (the court may reduce a term of imprisonment if after considering extraordinary and compelling reasons, the reduction is warranted, such as terminal illness, or debilitating physical conditions that prevent inmate self-care.); *compare* U.S.S.G. 1B1.10 and 18 U.S.C. § 3582(c)(2) regarding Reduction in Sentence ("in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment . . . .)

based on her claimed debilitating medical condition.  After carefully reviewing Defendant's medical status, the BOP concluded that Defendant was "able to complete self-care activities independently and [was] not confined to a bed or wheelchair more than 50% of waking hours."  *See* Exhibit B - BOP's Memorandum for Chris Samy.

Thereafter, on January 11, 2019, Defendant filed a Motion for Compassionate Release with the Court (Dkt. 66).  Defendant filed her motion based on the First Step Act of 2018 (Pub. L. No. 115-391, Section 603 (2018)), arguing that the newly enacted law allowed her to file the motion because she exhausted all of her administrative remedies and the Warden failed to answer her initial request within 30 days.  The Government argued that the Court lacked jurisdiction to consider Defendant's motion because Defendant had not exhausted all of her administrative remedies, despite her argument to the contrary.  Furthermore, the Government contended, compassionate release was not warranted because Defendant was not suffering from a terminal illness or debilitating medical condition, nor did her medical records support a finding that she was suffering from a serious or debilitated medical condition.  (Dkt. 71)  *Id*. at 2-10.

In denying Defendant's Motion for Compassionate Release, on April 3, 2019, the sentencing Court did not consider whether or not Defendant's old age and poor health warranted a reduction in her sentence.  Instead, the Court held that Defendant

3

failed to fully exhaust her administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) in that she did not appeal the BOP's decision denying her request for compassionate release.  (Dkt. 74)

On April 16, 2019, Defendant submitted a Request for Administrative Remedy (BP-9) (974498-FI) to the Warden's Office reiterating the same arguments enunciated in her October 24, 2018, request for a reduction in her sentence for compassionate release based on her claim of having a debilitated medical condition. Once again, Defendant's request was denied because she did not meet the medical criteria for a reduction in her sentence due to a debilitated medical condition.  *See* Exhibit C - BOP's Response to Request for Administrative Remedy #974498-F1. The BOP recognized that Defendant had serious medical conditions, but found that her conditions did not meet the medical criteria for reduction in sentence due to a debilitated medical condition.  *Id.*  In a written response dated April 22, 2019, the BOP advised Defendant that if she did not agree with the BOP's decision, she had 20 days from the date of BOP's response to appeal to the Regional Director.  After the BOP denied her request, Defendant subsequently filed a Motion for Reconsideration of Compassionate Release on June 24, 2019.  (Dkt. 75).  The sentencing Court, once again, ordered the Government to file a response to Defendant's motion.  (Dkt. 77)

## II.   LACK OF JURISDICTION

As with the previous filing, the Court lacks jurisdiction to make a determination on Defendant's current motion for reconsideration.  This Court's jurisdiction to vacate a validly imposed sentence and impose a different one is strictly limited by statute.  Pursuant to § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed . . . ."  The Sixth Circuit strictly enforces the jurisdictional limits of 18 U.S.C. § 3582(c).  *See United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001).   ("The authority of a district court to resentence a defendant is limited by statute" and is "expressly prohibit[ed] . . . beyond those exceptions expressly enacted by Congress."); *see also United States v. Johnson*, 564 F.3d 419, 421–22 (6th Cir. 2009); *United States v. Williams*, 607 F.3d 1123, 1125 (6th Cir. 2010).

Defendant has filed this second motion for reconsideration of the BOP's denial of her request for compassionate release.  Again, Defendant bases her motion on the First Step Act of 2018 ("the Act").  Section 3582(c)(1) of the Act now provides, in part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . .  after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Section 603(b) of the Act amends § 3582 to permit inmates in specified circumstances to file motions in court seeking "compassionate release." Previously, only the Director of BOP could file such a motion; and a court could not act on a motion for compassionate release unless the Director of BOP first filed the necessary motion. *See* e.g. *United States v. Yuk Rung Tsang*, No. 00-CR-80541, 2014 WL 821304, at *1 (E.D. Mich. Mar. 3, 2014) ("this Court does not have jurisdiction to review BOP's decision not to move for a reduction of defendant's sentence"); *United States v. Shemami*, No. 07-20160, 2012 WL 691746, at *2 (E.D. Mich. Mar. 1, 2012) (there is no judicial review of BOP's decision not to file a motion for reduction in sentence); *United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997) (petitioner not entitled to compassionate release absent motion from BOP Director); *Fernandez v. United States*, 941 F.2d 1488, 1493 (11th Cir. 1991) (district court cannot review BOP's refusal to file motion for release).

The Act now enables defendants to seek remedy from the Court but first requires, "the defendant [to have] fully exhausted all administrative rights to appeal." 18 U.S.C. § 3582(c)(1)(A). Here, again, Defendant has failed to do so.

The BOP should first have an opportunity to review Defendant's claims and make a final determination at a higher level before the Court attempts to determine whether its decision is entitled to deference.  The Bureau of Prisons' administrative remedy procedure allows an inmate to seek formal review of a complaint relating to any aspect of her confinement.  *See* 28 C.F.R. § 542.10 *et seq.*  The Supreme Court in *Woodford v. Ngo*, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) described the purposes of exhaustion:

> The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law.  The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.  Exhaustion of administrative remedies serves two main purposes.
>
> First, exhaustion protects administrative agency authority.  Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.
>
> Second, exhaustion promotes efficiency.  Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.  In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court.  And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

The petitioner bears the burden of establishing exhaustion.  *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).  Here, Defendant has not met her burden.

Defendant argues in her Memorandum in support of her Motion for Reconsideration that "she has completed the BOP administrative remedy steps" and

"has satisfied the procedural prerequisites and established extra ordinary and compelling reasons to grant her the compassionate early release." (Dkt. 75 at 7). However, Defendant has **_not_** exhausted all of her administrative remedies with the BOP and her proclamation to the contrary does not make it so.

The purpose of the Administrative Remedy Program is to provide a method by which to address an inmate's complaint. 28 C.F.R. § 542.10. If an inmate is dissatisfied with the Warden's determination regarding their request for administrative remedy, the inmate may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). An inmate who was not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the Office of General Counsel (Central Office) within 30 calendar days of the date the Regional Director signed the response. *Id.*

In his Declaration, Joseph McGuire, Senior Attorney for the Consolidated Legal Center and an employee of the BOP, explained the three-level administrative remedy process and how to properly exhaust all administrative remedies: "an inmate must timely and properly present a claim to each level, have that remedy request accepted and receive an actual response to that request." *See* Exhibit N - Declaration Paragraph 4 at 2. In reviewing the BOP's Administrative Remedy Generalized Retrieval Records (*see* Exhibit O), Defendant submitted a total of five administrative

remedy requests for compassionate release since April 16, 2019.  In Analyzing the

BOP's records concerning Defendant's requests, McGuire found the following:

> On April 16, 2019, an institution level request (BP-9) was received at the Federal Medical Center in Carswell, Texas seeking compassionate release.  On April 22, 2019, the request was denied.
>
> On April 29, 2019, the BOP's South Central Regional Office received an appeal (BP-10).  The BP-10 was rejected on April 30, 2019, because Defendant did not submit the proper number of continuation pages with her appeal and did not submit the correct number of copies of the attachments.  The remarks section for this request advised Defendant that only one page, one-sided continuation page was allowed.  The continuation page must have original and two copies.  Finally, Defendant was told she may resubmit her appeal in proper form within 15 days of the date of the rejection notice.
>
> On May 20, 2019, the BOP's Central Office received an appeal (BP-11).  The BP-11 was rejected on May 20, 2019.  The basis for rejection was that the Central Office concurred with the rationale of the Regional Office.
>
> On May 28, 2019, the BOP's South Central Regional Office received a second appeal (BP-10).  This BP-10 was rejected on May 29, 2019.  The basis for rejection was that Defendant may only submit up to one letter-size (8-1/2" x 11") continuation page.  The remarks section for this remedy advised Defendant that she could only have one page, one-sided continuation page.  She was advised that her continuation page was three pages long.  Additionally, Defendant was told that she may resubmit her appeal in proper form within 15 days of the date of the rejection notice.
>
> On June 26, 2019, the BOP's South Central Regional Office received a third appeal (BP-10).  This BP-10 was accepted, but had not yet issued a response.  The South Central Regional Office has 30 days from the date of receipt in which to respond.  The time for response may be extended once by 30 days at the regional level.  *See* 28 C.F.R. § 542.18.

Based on the foregoing administrative record, McGuire found that Defendant had

not completed the BOP's administrative remedy process in regard to a reduction in

sentence because the Regional Office had not yet responded to Defendant's June 26, 2019, appeal.  (Declaration at 4).  Instead of exhausting her administrative remedies, by submitting a request to the Regional Office and waiting for its response, then filing a BP-11 with the Central Office if she did not agree, Defendant filed this Motion for Reconsideration two days before her appeal to the Regional Office.

On July 3, 2019, the South Central Regional Office timely responded to Defendant's appeal.  Pursuant to Program Statement 5050.50, the BOP denied Defendant's appeal and determined that she could complete self-care activities independently, was not confined to a bed or wheel chair for more than 50% of waking hours and, despite her medical conditions, she did not meet the criteria for a reduction in sentence.  In addition, the BOP advised Defendant that she could appeal the denial to the Office of General Counsel (Central Office).  *See* Exhibit P Regional Administrative Remedy Appeal Denial.[23]

The record clearly shows that Defendant has not fully exhausted all of her administrative remedies, as she has not filed a BP-11 if she disagreed with the

---

[2] Defendant filed additional papers with the Court on July 15, 2019 (Dkt. 79) which included an excerpt from the BOP Regional Denial.  The filing also included medical records for two other prisoners, Kimberli Himmell and Carissa Carpenter.  The supplemental medical records of other inmates are not relevant to a decision on Defendant's medical condition.  Additionally, as these records include protected health information and personal identifying information of other inmates, the government submits that they should be removed from the public record, or at a minimum redacted, pursuant to Federal Rule of Criminal Procedure 49.1.

[3] McGuire also submitted a Public Information Inmate Data Sheet showing the percentage of Defendant's full term served.  He noted that BOP's policy requires an inmate to have served two-thirds of their sentence to be eligible for early home confinement.  *See* Exhibit S.

Regional Office's determination.  As such, Defendant should not now be allowed to bypass the administrative remedy procedures and obtain judicial review of her claims.  To do so would unfairly circumvent the BOP's administrative authority.  Consequently, Defendant's motion should be dismissed for failure to fully exhaust all of her administrative remedies.

## III.    COMPASSIONATE RELEASE IS NOT WARRANTED

Even if the Court were to exercise jurisdiction to consider Defendant's motion, it should be denied because it fails on the merits.  Section 3582(c)(1)(A)(i) permits compassionate release of an inmate based on "extraordinary and compelling reasons," consistent with any applicable policy statement of the Sentencing Commission.  Policy statements of the Commission are binding on the Court.  *See Dillon v. United States*, 560 U.S. 817, 827, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010).  As the proponent of the motion, Defendant bears the burden of proving both that she has satisfied the procedural prerequisites for judicial review and that "extraordinary and compelling reasons" exist.  Again, Defendant has not met her burden.

Application Note 1 to U.S.S.G. 1B1.13 sets forth the "extraordinary and compelling reasons" that may justify compassionate release:

> 1. Extraordinary and Compelling Reasons—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)  Medical Condition of the Defendant—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

As the agency that sees and evaluates all requests for compassionate release, the BOP has the greatest expertise in this area and is further in the best position to gather all of the materials needed for thorough evaluation of the request.  Its efforts should therefore be of significant benefit to the Court.   In determining whether compassionate release is warranted, the BOP's Program Statement considers whether the inmate is suffering a debilitated medical condition such that the inmate has an incurable, progressive illness or has suffered a debilitating injury from which they will not recover.  Consideration is also given when the inmate is unable to carry on any self-care and is totally confined to a bed or chair; or capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

On three separate occasions, the BOP determined that Defendant was not entitled to a reduction in her sentence because she did not meet the requirements for compassionate release.  The BOP found that Defendant is not suffering any terminal illness or debilitating medical condition.  Further, the BOP found that Defendant could complete self-care activities independently and was not confined to a bed or wheelchair more than 50% of waking hours.  *See* Exh. B, Exh. C and Exh. P.  In fact, Defendant previously acknowledged this.  *See* Exhibit D - 11/26/2018 Clinical Encounter Administrative Note ("Patient states she is not completely disabled, she is able to complete self care, and she is not currently confined to a bed or chair more than 50% of waking hours.")

In this motion, Defendant makes the same claims as in her first motion regarding her health conditions and states that her health has greatly deteriorated since her incarceration.  *See* Dkt. 75 at 2.  Consequently, she argues in this motion, as she did in her first, that her 36 month sentence amounts to a "Defacto Death Sentence."  *See* Dkt. 73 at 7 and Dkt. 75 at 3.  She attempts to paint a picture that her various medical conditions have been left untreated by the prison facility.  However, her extensive medical records paint quite a different picture.  *See* Exhibit Q - Updated Medical Records from BOP.[4]  Defendant's medical records at the prison

---

[4] As part of the Order requiring a response to defendant's motion, the Court order the government to attached to its response, defendant's medical records from the date of surrender to BOP.  Exhibit Q contains the records from the Bureau of Prisons.

facility support a finding that she is not suffering from a serious or debilitated medical condition and she is currently receiving adequate medical care.  In fact, her current medical records show, among other things, that "patient has improved a lot, she lost 23 pounds, her DM (diabetes mellitus), HTN (hypertension) and CHF (congestive heart failure) have improved.  She is now category 2 medical care.[5]  Her main problem now is the hearing loss."  *See* Exhibit E - 04/12/2019 Clinical Encounter; Exh. Q at 24.

Defendant's medical records also show that her hypertension and heart disease are within normal limits.  *See* Exhibit F - 04/12/2019 Clinical Encounter; Exh. Q at 18.  Defendant is currently being treated for her COPD with medication and oxygen.  *See* Exhibit G - 04/12/2019 and 05/16/2019 Clinical Encounters; Exh. Q at 10, 17.  She is being evaluated by ENT for her hearing loss and is being fitted for hearing aids.  *See* Exhibit H - 05/14/2019 Clinical Encounter Administrative Note; Exh. Q at 11.  Her Type II Diabetes is being controlled with medication and diet.  *See* Exh. G.  Defendant's record also shows that she is ambulatory, uses a cane for walking and for standing from sitting or lying down.  *See* Exhibit I - 04/12/2019 Clinical Encounter; Exh. Q at 20.  In addition, the prison facility requested a

---

[5] The BOP categorizes institutions by care levels 1 through 4; with 1 being the lowest and 4 being the highest providing the most care.  Defendant is at Care Level 2 - second lowest. "Inmates with Care Level 2 needs are those who are stable outpatients, requiring at least quarterly clinician evaluation . . . .  Inmates with Care Level 3 needs are fragile outpatients who require frequent clinical contacts."  *See* Exhibit R – Declaration of Dr. Charles Langham at 4 fn. 2.

cardiology consult for Defendant on 03/11/2019. *See* Exhibit J - 03/11/2019 Clinical

Encounter; Exh. Q at 32. Defendant was also given a walker, cane and medical

shoes, among other things, to assist her. *See* Exhibit K - 04/12/2019 Medical Duty

Status; Exh. Q at 189.

The clinical director at the BOP, Dr. Charles Langham, after reviewing

Defendant's medical records, stated in his Declaration the following:

> I have reviewed Samy's BEMR (Bureau Electronic Medical Records)
> record and concur that a reduction in sentence is not warranted, as Samy
> does not meet the criteria for a reduction in sentence. *See* Exhibit R -
> Declaration of Dr. Charles Langham at 5. Further, Defendant did not
> meet the criteria for a debilitated medical condition, pursuant to the
> BOP's Program Statement 5050.50, such as an incurable, progressive
> illness or a debilitating injury from which she will not recover. *Id*. at 5.
>
> [I]t is well documented . . . that [Defendant] is able to use a walker, not
> confined to a bed or chair more than 50% of her waking hours . . . .
> [M]y review of Samy's BEMR records reflects that none of [her
> medical conditions] rise to the level of warranting a reduction in
> sentence, as none of them are terminal, and Samy is not confined to a
> bed or chair more than 50% of her waking hours. It should be noted
> that many of Samy's conditions have improved while she has been
> housed at FMC Carswell . . . . Additionally, it was recommended that
> Samy discontinue supplemental oxygen . . . . (*See* Exh. Q at 3 - May
> 12, 2019 Clinical Encounter – Administrative Note).
>
> [Additionally], Samy was seen by Psychology and denied a need for
> mental health treatment. She was alert, oriented on all spheres, and
> groomed appropriately for the setting. She had good eye contact and
> her speech, psychomotor functioning, and interpersonal engagement
> were all normal. Her mood was euthymic with congruent, stable affect.
> Her thought process was linear, organized, and future oriented. Her
> thought content was unremarkable; no evidence of psychosis or acute
> cognitive impairment was observed. (*See* Exh. Q at 215 - March 8,
> 2019 Clinical Intervention – Clinical Contact).

In conclusion, Dr. Langham found that Defendant received proper medical treatment during her incarceration at FMC Carswell and her medical conditions did not represent extraordinary or compelling medical circumstances that would warrant compassionate release.  Exh. R at 6.

There is no doubt that Defendant suffers from various medical conditions, one of which is heart disease.  However, her conditions are not terminal.  In this motion, as in her first, Defendant discusses that she believed she suffered from a heart attack.  However, Defendant admits that this is not currently a major problem.  *See* Dkt. 66 at 6 ("I am very sure that I had a cardiac event ***though it was not a major one***.") (emphasis added) and her medical records show that her hypertension and heart disease are within normal limits.  Defendant argues that her "chronic situation can become acute without any notice, which is life threatening."  (Dkt. 66 at 1).  The same holds true, even if she were at home.  Defendant's medical records support that she is currently being monitored and treated for her heart condition.  *See* Exhibit L - 03/11/2019 Clinical Encounter (Patient had an abnormal EKG 1/10/19 after experiencing a brief syncope episode [fainting] . . . consult placed for Cardiology . . . requested 48 hour Holter Monitor to rule out persistent PACs [irregular heart rhythm]).  Her Holter Monitor Reports showed her PACs all within normal limits.  *See* Exhibit M - Holter Monitor Reports Recorded on 03/13/2019 and 03/20/2019; Exh. Q at 285, 287.

Notably, all of Defendant's medical conditions were in existence and discussed at the time of her sentencing. *See* Dkt. 75 at 9. The fact that Defendant suffers from heart issues was well known to the Court and taken into consideration in the variance of her guideline sentence. The Court varied substantially from the 87 to 108 guideline range when it imposed a 36 month term of incarceration and documented the reasons for doing so to include Defendant's health and age. Nothing has changed since the Court imposed its sentence. In fact, the prison facility has noted that Defendant's conditions have improved. Defendant should not now be entitled to a further variance simply by filing this motion.

What really is at issue before the Court is Defendant's preference to choose her medical provider and plan of treatment and her desire to go home – none of which is extraordinary or compelling to justify a reduction in the already lenient sentence imposed by this Court. Because Defendant has already received the Court's consideration of her medical condition, her motion for compassionate release should be denied.

Defendant cites several cases to support her argument that she should receive compassionate release. However, none of these cases are controlling; they do not support her position; and each can be distinguished from the facts of this case. In *Rosado v. Alameida*, 497 F. Supp. 2d 1179 (S.D. Cal. 2007), the estate of a deceased inmate filed a medical malpractice claim against prison doctors for failure to

consider the inmate for a liver transplant. That case had nothing to do with a reduction in sentence or compassionate release. Similarly, the case of *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), was a § 1983 complaint for failure to provide medical care. There, the court was to determine if there were any constitutional violations in how the inmate's medical care was handled. Nonetheless, the court found, as should the court here, that defendant received adequate medical care. Unlike *United States v. Dimasi*, 220 F. Supp. 3d 173 (D. Mass. 2016), where defendant's health was found to have diminished his ability to function in the custody of the BOP, there is no threat here of Defendant choking to death while eating and needing daily monitoring while she eats. Additionally, in *United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488 (S.D. Ind. May 9, 2019), the defendant was not able to provide self-care and needed frequent monitoring, evaluation and treatment for his medical conditions. That is clearly not the case here as the BOP has found on three separate occasions that Defendant was capable of self-care.

Defendant's medical condition is not one that would justify a compassionate release. Her health, albeit not in the best condition, is in fact improving under the care of the BOP. The fact that the defendant is not satisfied with her medical care does not create an extraordinary or compelling reason to reduce her sentence. The

case law simply does not support a finding that the Defendant is entitled to compassionate release; and her motion should be denied.

## IV.   CONCLUSION

Defendant did not fully exhaust all of her administrative remedies with the Bureau of Prisons.   Therefore, the Court lacks authority to reduce Defendant's sentence.   Nonetheless, the Defendant is currently medically stable, able to provide self-care, being provided adequate medical treatment, housed at a medical prison facility and is no more at risk of death than any other person with heart disease.   Her medical records show that her heart condition has improved.   The fact that she would simply choose to receive medical care at home, as opposed to being in custody, does not warrant a compassionate release.

For the foregoing reasons, the Government respectfully requests that the Court dismiss or deny Defendant's motion and further order that Defendant serve the remainder of her custodial term at the Federal Medical Center (FMC) Carswell, or any other medical facility designated by the Bureau of Prisons where she can continue to receive proper medical treatment.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

/s/ Brandy R. McMillion
Brandy R. McMillion (P69838)
Assistant United States Attorney

211 Fort Street, Suite 211
Detroit, MI 48226
(313) 226-9622
Brandy.McMillion@usdoj.gov

Dated: July 26, 2019

## Certificate of Service

I hereby certify that on July 26, 2019, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

Mark J. Kriger
N.C. Deday LaRene
645 Griswold Street
Penobscot Building, Suite 1717
Detroit, MI 48226
(313) 967-0100
*Counsel for Defendant Chris Samy*

/s/ Brandy R. McMillion
Brandy R. McMillion (P69838)
Assistant United States Attorney
 211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9622
Brandy.McMillion@usdoj.gov