UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIS SAMY,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

Criminal Case No. 16-20610-1

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER GRANTING PETITIONER'S MOTION FOR RECONSIDERATION OF ORDER DENYING COMPASSIONATE RELEASE [75]**

Before the Court is Chris Samy's petition for compassionate release from prison due to her age and chronic health conditions, which put her at a higher risk of death from COVID-19. Samy first filed a Motion for Compassionate Release [66] on January 11, 2019. On April 3, 2019, the Court denied her motion without prejudice, finding that Samy had not exhausted all of her administrative remedies. (ECF No. 74). Samy now claims that she has properly exhausted her remedies and asks for reconsideration. (ECF No. 75). On April 2, 2020, Samy filed a Supplemental Brief [86] arguing for relief in light of the COVID-19 pandemic. (ECF No. 86). On April 3, 2020, the Government filed a Supplemental Brief [87] in opposition. For the reasons stated below, the Court **GRANTS** Petitioner's motion.

## FACTUAL BACKGROUND

On February 1, 2018, Samy pled guilty to Conspiracy to Possess With Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1), 846. (ECF No. 46, PageID. 149). On June 6, 2018, the Court sentenced Samy to 36 months (3 years) incarceration followed by 36 months of supervised release. (ECF No. 58, PageID. 359-60). Due to her serious medical conditions, Samy is incarcerated in Federal Medical Center ("FMC") Carswell in Fort Worth, Texas.

Samy is 72 years old. Her medical records show that she has been diagnosed with 12 serious ailments, including: Uncontrolled Hypertension, Congestive Heart Failure, Type II Diabetes, and Asthma. (ECF No. 75, PageID. 597). Samy, a medical doctor herself, worries the most about her heart. (*Id.* at 559-60). In fact, she claims that she suffered from a heart attack only weeks into her stay at FMC Carswell. (*Id.*). Several witnesses state that during the attack, Samy collapsed in the Commissary line, fell unconscious, ceased breathing, rolled her eyes back, and frothed at the mouth. (ECF No. 67, PageID. 486-92, 495). Samy claims that she only survived by the quick thinking of a fellow inmate who swiftly gave her a chest thump and administered CPR. (*Id.* at 486). Samy also claims that she has received inadequate medical care in prison, for example, she states that she was not seen by a cardiologist after her heart attack, despite making several requests, and was instead treated for a Urinary Tract Infection. (ECF No. 75, PageID. 562, 566; ECF. No. 76, PageID. 622).

Although several of Samy's conditions are stable, as the Government points out, Samy states that her overall health has "greatly deteriorated since her incarceration." (*Id.* at 560). She claims that she has lost 40 pounds, suffers from reoccurring infections, has seen the return of previously removed cataracts, and often requires oxygen to breathe. (*Id.* at 565-65.) Moreover, the prison environment only exacerbates her ailments. The transport time limits cause Samy severe stress "to the point of shortness of breath, elevated blood pressure, dizziness, anxiety and chest pain." (*Id.* at 561). Her medical reports corroborate much of this information. (*Id.* at 568, 594, 598, 603; 597 (detailing a list of over 12 medications her doctor prescribed her shortly before incarceration)).

Due to her condition, Samy sought compassionate release from the BOP in late 2018. (ECF No. 66, PageID. 475-77). On November 30, 2018, Warden Jody R. Upton, denied Samy's request for compassionate release because "[a] review of [her] current medical status indicate[d] [she was] able to complete self-care activities independently and [is] not confined to a bed or wheelchair more than 50% of waking hours." (*Id.* at 480). The Warden additionally noted that Samy could "appeal this denial through the Administrative Remedy Program." (*Id.*). Instead of appealing, Samy commenced the instant action on January 11, 2019. (ECF No. 66). On April 3, 2019, the Court denied her motion because she "failed to fully exhaust her

administrative remedies as required by § 3582(c)(1)(A)." (ECF No. 74, PageID. 557).

Afterwards, on April 15, 2019, Samy promptly requested reconsideration of the Warden's compassionate release denial, adding information about her heart attack, which occurred on December 27, 2018. (ECF No. 75, PageID. 594). Reconsideration was denied on April 22, 2019. (*Id.* at 610). Samy then sent a BP-10 appeal to the Regional Office on April 29, 2019, a BP-11 appeal to the Central Office on May 20, 2019, and another BP-10 appeal to the Regional Office on May 28, 2019. (ECF No. 80-5, PageID. 679-80). All three appeals were rejected for violating page length rules. (*Id.*) On June 26, 2019, the Regional Office received a page length compliant BP-10 appeal from Samy. (*Id.* at 680; ECF No. 80, PageID. 658) On July 3, 2019, the Regional Director denied Samy's appeal due to her ability to independently complete self-care activities and was told that she could submit a BP-11 appeal to BOP's Office of General Counsel, the final administrative appeal. (ECF No. 80-7, PageID. 689); 28 C.F.R. § 542.15(a). Samy argues, without supporting documentation, that she did so; the Government argues the contrary (ECF No. 83, Page ID. 1051; ECF No. 80, PageID. 659).

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

> exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

The Court will discuss both elements—exhaustion of administrative remedies and extraordinary and compelling reasons for release—in turn.

### I. Exhaustion of Administrative Remedies

Although Samy's final administrative appeal is missing from the record, the Court finds that it has jurisdiction over her claims through waiver. *See Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020). "Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

These exceptions include waiver of exhaustion "where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue" and "where pursuing agency review would subject plaintiffs

to undue prejudice." *Washington*, 925 F.3d 118. Both exceptions apply here. First, Samy has petitioned the BOP for compassionate release at least six times, at every administrative level. And at each level, her appeals were denied on either substantive or procedural grounds. On several occasions, the BOP has told Samy that she does not meet the criteria for release because she is "not confined to a bed or wheelchair more than 50% of waking hours." (ECF No. 80-7, PageID. 689; ECF No. 66, PageID. 480). Here, the BOP "has already determined the issue," to such an extent that requiring her to submit yet another appeal and wait for the same response would be futile. *Washington*, 925 F.3d 118; *see also Miller*, 2020 WL 1814084 (finding the same).

Second, such a delay would unduly prejudice Samy. COVID-19 is spreading at rapid and unprecedented rates. In Texas, where Samy is incarcerated, the number infected has grown from 4,665 on April 2nd to 15,492 on April 15th—tripling in two weeks. *Texas Case Counts*, TEXAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83 (last visited Apr. 16, 2020). Moreover, two of FMC Carswell's inmates have tested positive. *COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 16, 2020). In regard to the exhaustion requirement, the Supreme Court provides the following guidance:

> In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a

federal judicial forum against countervailing institutional interests favoring exhaustion. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *West v. Bergland,* 611 F.2d 710, 715 (CA8 1979), cert. denied, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

*McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

In the midst of a global pandemic, the balance of interests weighs in Samy's favor. Because her claims require immediate judicial review, this case is properly before the Court.

    II.    <u>Extraordinary and Compelling Reasons for Release</u>

In order to determine if extraordinary and compelling reasons exist to release Samy, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>     **(ii)** The defendant is--
>         **(I)** suffering from a serious physical or medical condition,
>         **(II)** suffering from a serious functional or cognitive impairment, or

>> **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
> [. . .]
>
> **(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Samy has presented "Other Reasons" in combination with her serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. TIMES (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); *See, e.g.*, Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, GOVERNMENT EXECUTIVE (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union

complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19. She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable. 18 U.S.C. § 3582(c)(1)(A)(i) compassionate release granted."); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2 ("Because Defendant is

at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.").

Lastly, Samy squarely fits the definition of an individual who has a higher risk of dying or falling severely ill from COVID-19. The Center for Disease Control ("CDC") states that individuals who are 65 and older have a higher risk of severe illness. *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 16, 2020). Samy is 72. The CDC also states that individuals with underlying medical conditions, such as a serious heart condition, diabetes, and asthma, have a higher risk of severe illness. *Id.* Samy suffers from all three. Continuing Samy's incarceration under the current circumstances could be a lethal decision. Therefore, the Court finds that extraordinary and compelling reasons exist for her immediate compassionate release.

## CONCLUSION

**IT IS ORDERED** that Petitioner's Motion for Reconsideration of Order Denying Compassionate Release [75] is **GRANTED**.

**IT IS FURTHER ORDERED** that Samy be immediately placed in a 14-day quarantine before her release from FMC Carswell, in accordance with Attorney General Barr's directive to the BOP.

**SO ORDERED**.

Dated: April 16, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge